# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| THE ESTATE OF BILLY DEWAYNE COUCH, by and through administrator KELSEY MORGAN BROWN, and KELSEY MORGAN BROWN, Surviving Child of Billy Dewayne Couch, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY AARON CARNES, SHERIFF MITCH RALSTON, and GORDON COUNTY,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>_____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, ESTATE OF BILLY DEWAYNE COUCH, by and through administrator KELSEY MORGAN BROWN, and KELSEY MORGAN BROWN, in her personal capacity, hereby complain against Defendants, DEPUTY AARON "STORM" CARNES, SHERIFF MITCH RALSTON, and GORDON COUNTY, and state as follows:

### INTRODUCTION

1. Billy Dewayne Couch should be alive today. Tragically, however, his life was taken from him when Gordon County Sheriff's Deputy Aaron "Storm" Carnes decided to shoot Mr. Couch three times in the back and side in the backyard of his home.

2. When Deputy Carnes shot him, Mr. Couch posed no threat and was visibly unarmed with empty hands. Unconscionably, Deputy Carnes then refused to provide any medical care and impeded efforts to attempt to save Mr. Couch. Mr. Couch died soon after.

3. Owing to the policies and practices the Gordon County Sheriff and Gordon County, Defendant Carnes faced no accountability for this shooting and was, instead, back patrolling days later.

4. Nothing can bring Mr. Couch back to his loving family, friends, and community. This action, brought under 42 U.S.C. § 1983, nonetheless seeks some measure of justice—and accountability—for the wrongful, unjustified killing of Billy Dewayne Couch and seeks to deter the wrongful, unjustified shootings of others at the hands of members of the Gordon County Sheriff's Office.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b) and Northern District of Georgia Local Rule 3.1B because the events giving rise to Plaintiffs' claims occurred within Gordon County, Georgia, which is situated within the jurisdictional boundaries of the Rome Division of the Northern District of Georgia and because one or more of the parties reside within this district and division.

## PARTIES

7. The Estate of Billy Dewayne Couch represents the property and legal interests of decedent Billy Dewayne Couch.

8.      Plaintiff Kelsey Morgan Brown, the daughter of Billy Dewayne Couch, is the duly appointed Administrator of the Estate of Billy Dewayne Couch.

9.      Kelsey Morgan Brown is also a party to this action in her personal capacity as Billy Dewayne Couch's surviving child.

10.     Defendant Aaron "Storm" Carnes is a current Deputy of the Gordon County Sheriff's Office. Defendant Carnes acted under color of law and within the scope of his employment at all times relevant to this lawsuit. He is sued in his individual capacity.

11.     Defendant Mitch Ralston is the duly elected Sheriff of Gordon County, Georgia and was, at all times relevant herein, responsible for enacting policies and practices regarding the training and supervision of Gordon County Sheriff's Deputies. Sheriff Ralston is sued individually and in his official capacity as Sheriff of Gordon County. Prior to filing this claim for damages, Plaintiffs timely presented Sheriff Ralston with notice of these claims as required by O.C.G.A. § 36-11-1.

12.     Defendant Gordon County ("the County") is a county in Georgia, of which Defendants Ralston and Carnes are law enforcement officers. The County is a corporate body as defined by O.C.G.A. § 36-1-3 and is the state governmental subdivision responsible for properly maintaining, operating, and funding the Gordon County Sheriff's Office. The County is financially liable for Carnes's and Ralston's tortious acts as county officers and is obligated to indemnify them. Prior to filing this claim for damages, Plaintiffs timely presented the County with notice of these claims as required by O.C.G.A. § 36-11-1. Defendant Ralston, as Sheriff, is a final policymaker for Gordon County.

## FACTUAL ALLEGATIONS

13. Shortly after midnight on the morning of January 24, 2023, Billy Dewayne Couch pulled into the back yard and driveway of his family's rural home in Sugar Valley. Gordon County Sheriff's Deputy Aaron "Storm" Carnes followed Mr. Couch, attempting to place Mr. Couch under arrest.

14. Mr. Couch exited his truck. In so doing, Mr. Couch did not threaten Deputy Carnes, make any sort of threatening motion, or do anything that would pose a threat to the officer or anyone else. Instead, he was obviously terrified.

15. Defendant Carnes pointed a gun at Mr. Couch anyway.

16. Defendant Carnes charged toward Mr. Couch with his gun drawn, shouting profanities and commanding Mr. Couch to show his hands.

17. At one point, Mr. Couch raised his hands in the air, showing the deputy he was unarmed and not a threat. Mr. Couch turned and attempted to find some sort of safety.

18. Despite the fact that Mr. Couch was unarmed, had shown Carnes his hands, and was moving away with his back turned toward the deputy, Defendant Carnes shot him.

19. Defendant Carnes did non provide any verbal warning before shooting.

20. Defendant Carnes fired four bullets.

21. Three of the bullets struck Mr. Couch: one in the back, one in the shoulder, and one in the side.

22. None of the bullets struck Mr. Couch in the front of his body—he was not facing or turning towards Deputy Carnes when Carnes decided to shoot him.

23. When Deputy Carnes shot him, Mr. Couch was not a threat to the deputy or any other person.

24. When Deputy Carnes shot him, Mr. Couch was unarmed, non-threatening, and in the backyard of the place he lived.

25. Before Deputy Carnes shot him, Mr. Couch did not say anything threatening to Carnes, make any aggressive movements, or do anything that would be indicative of a threat of serious bodily harm to Carnes or anyone else.

26. After being shot, Mr. Couch crumbled to the ground, and was obviously gravely wounded.

27. Defendant Carnes nonetheless continued to point his gun at Mr. Couch and shout commands as Mr. Couch was bleeding out and dying in the mud.

28. After being shot and before he died, Mr. Couch suffered immense pain and was obviously suffering.

29. Deputy Carnes refused to provide any medical care to Mr. Couch.

30. In fact, Deputy Carnes impeded medical care, even telling emergency medical services *not* to come to the scene.

31. Deputy Carnes refused to provide and prevented Mr. Couch from receiving any medical attention for over ten minutes and after Mr. Couch stopped showing signs of life.

32. Mr. Couch died because of the bullet wounds inflicted by Deputy Carnes.

33. Knowing that he had killed Mr. Couch without cause, but knowing that the Sheriff and Gordon County would treat him with impunity if he invoked a pretextual excuse, Deputy Carnes made up a fake reason he had shot an unarmed person—Mr. Couch—in the back.

34. Deputy Carnes falsely claimed he shot Mr. Couch because Mr. Couch made a "drawing motion" with his arm and stepped towards Deputy Carnes.

35. That never happened.

36. Mr. Couch did not make a drawing motion—he had nothing to draw.

37. Nor was Mr. Couch moving toward Deputy Carnes when Carnes shot and killed him. Deputy Carnes shot Mr. Couch in the back without justification.

38. Defendant Carnes made up this story because he knew it was the sort of thing that would, in a culture of impunity, lead Gordon County and the Sheriff to deem his actions consistent with the policies and practices of the Department.

39. Gordon County and the Gordon County Sheriff accepted Deputy Carnes's made-up story because it was part and parcel of their policies and practices to permit officers to shoot first without asking questions later.

40. Reflective of this practice, Deputy Carnes was back at work again—rather than placed on administrative leave—before the investigation had even begun in earnest, let alone been completed.

41. The Department did not complete any sort of investigation into the shooting before putting Carnes back on the street.

42. Such a practice is an egregious departure from standard practices in law enforcement.

43. Officers who shoot and kill people are typically placed on some sort of administrative leave as an investigation unfolds into why they took the life of another human being. Yet, owing to its culture, practice, and policy of impunity, the Sheriff and Gordon County did not wait to conduct any such investigation.

44. If fact, Deputy Carnes knew this practice well from his own prior experience, having been permitted to return working soon after he was involved in another incident of deadly force roughly nine months before he killed Mr. Couch.

45. In April 2022, Defendant Carnes was one of two Gordon County Sheriff's deputies who shot and killed Casey Honea, a man posing no visible threat to the deputies or any others. Carnes faced no sanction after he had his fellow deputy claimed Honea had reached for a knife and moved towards them.

46. Pursuant to County practice, Deputy Carnes returned to work shortly thereafter, and made up a fake, but difficult to dispute, claim in the Honea shooting, as with Mr. Couch.

## PLAINTIFFS' DAMAGES

47. As a result of the Defendants' actions, Mr. Couch suffered substantial harm after he was shot and before he ultimately passed away. The amount of excruciating pain Mr. Couch felt as he was shot three times, then lay on the ground feeling his blood and life leave his body as he was yelled at, handcuffed, and denied medical care, is unquantifiable.

48. In addition, Billy Dewayne Couch, a fifty-one-year-old father and grandfather, lost the opportunity to live the remainder of his natural life, enjoy the company of his neighbors and loved ones, and see his grandchildren grow up.

49. Likewise, Mr. Couch's daughter, Ms. Brown, has suffered an immeasurable harm: losing her father through a senseless and unjustified act of violence. The cruelty of this loss has been compounded by the lack of justice for Mr. Couch as authorities failed to bring any accountability to Defendant Carnes. Ms. Brown's life will now be forever altered by the actions of the Defendants and the pain of her father's death and his absence from her life.

50. Mr. Couch was loved and cared for by his grandchildren, his daughter, his extended family members, his girlfriend, and his neighbors in Sugar Valley, a close-knit rural community he had been part of for most of his life. They have all been harmed by his tragic, unnecessary death.

## LEGAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
### Excessive Deadly Force Claim
### (Defendants Carnes and Ralston)

51. Each paragraph of this Complaint is incorporated as if restated fully herein.

52. As described in the preceding paragraphs, Defendant Carnes intentionally shot Billy Dewayne Couch when Mr. Couch posed no threat to Carnes or any other person, causing Mr. Couch's injury and death. This action violated Mr. Couch's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution, due to the deadly excessive force used against Mr. Couch, which was entirely unjustified.

53. Defendant Carnes's misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

54. Defendant Ralston, in his individual capacity, bears supervisory liability for this Count for the following reasons.

55. As an official policy or custom, Defendant Ralston failed to implement a policy to adequately train Gordon County Sheriff Deputies with respect to the conduct of civil infraction stops, de-escalation methods, the techniques to be used when seeking arrestees' compliance, and the use of deadly force, which resulted in Defendant Carnes acting with reckless disregard of Mr. Couch's constitutional rights. This failure to train had the predictable result of obvious and flagrant abuses, such as the killing of Casey Honea in April 2022, in which Defendant Carnes participated, and the killing of Mr. Couch.

56. The killing of Casey Honea put Defendant Ralston on notice that Defendant Carnes had a tendency or propensity to use deadly force under circumstances where it was

unnecessary to do so. Based on this incident, Defendant Ralston knew that Defendant Carnes had a tendency or propensity to use deadly force under circumstances where it was unnecessary to do so, and that he would continue to use excessive deadly force in violation of the constitutional rights of the people of Gordon County. However, Defendant Ralston failed to take sufficient steps to stop Defendant Carnes from doing so, instead returning him to the streets of Gordon County without adequate re-training, discipline, or supervision.

57. These failures led to the foreseeable result of the violation of Billy Dewayne Couch's constitutional rights, and to his injury and death.

### COUNT II – 42 U.S.C. § 1983
### Deliberate Indifference to Serious Medical Need Claim
### (Defendants Carnes and Ralston)

58. Each paragraph of this Complaint is incorporated as if restated fully herein.

59. As described in the preceding paragraphs, Defendant Carnes's actions toward Mr. Couch violated his constitutional rights, including but not limited to rights under the Fourth and Fourteenth Amendments of the United States Constitution, due to the failure to render any medical care to Mr. Couch after Defendant Carnes fatally him.

60. After he shot Mr. Couch, Defendant Carnes knew or should have known that Mr. Couch was seriously injured and needed urgent medical care. However, even though he knew or should have known of the risk of serious harm to Mr. Couch from his injuries, he did nothing to mitigate that risk. Instead, Carnes refused to provide medical care and in fact took efforts to prevent Mr. Couch from receiving treatment, all with deliberate indifference to the fact that Mr. Couch could, and indeed did, die from his injuries.

9

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Billy Dewayne Couch's constitutional rights.

62. Defendant Ralston, in his individual capacity, bears supervisory liability for this Count for the following reasons.

63. Defendant Ralston intentionally implemented official policies or customs that encouraged employees of the Gordon County Sheriff's Office, including Defendant Carnes, to act with deliberate indifference to the serious medical needs of arrestees, in violation of their Fourth and Fourteenth Amendment rights.

64. Defendant Ralston directed Defendant Carnes to act in accordance with these policies or customs, even though doing so could, and did, lead to the violation of people's constitutional rights and to their injury and death.

65. Defendant Ralston know that Defendant Carnes, as his subordinate, would take actions in accordance with this policy and thus in violation of people's constitutional rights, and Defendant Ralston failed to stop Defendant Carnes from taking such actions.

66. This failure led to the foreseeable result of the violation of Billy Dewayne Couch's constitutional rights, and to his injury and death.

## COUNT III
### *Monell* Claim
### (Defendants Ralston and Gordon County)

67. Each paragraph of this Complaint is incorporated as if restated fully herein.

68. As the Sheriff of Gordon County, Defendant Ralston is liable in his official capacity for the violation of Mr. Couch's constitutional rights. Defendant Ralston is responsible

for all policies and procedures of the Gordon County Sheriff's Department, as well as the conduct of all its agents and employees, including Defendant Carnes.

69. The Gordon County Sheriff's Office is a subdivision of the government of Gordon County. Defendant Gordon County is responsible for maintaining, operating, and funding the Gordon County Sheriff's Office, and is liable for its torts. In his capacity as the Gordon County Sheriff, Defendant Ralston is a final policymaker for Gordon County.

70. Defendants Ralston and Gordon County, by failing to impose any discipline on Defendant Carnes, even to the date this suit was commenced—over a year after the shooting—have ratified his conduct and indicated that Defendant Carnes acted pursuant to the polices, customs, and practices of Gordon County.

71. Defendant Carnes unconstitutionally shot and killed Mr. Couch and caused Plaintiffs' injuries as a result of the policies and practices of the Gordon County Sheriff's Office, such that Defendants Ralston and Gordon County are also liable, in the following ways:

   a. As a matter of both policy and practice, Defendants Ralston and Gordon County encourage, and are thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline their deputies such that failure to do so manifests deliberate indifference.

   b. As a matter of both policy and practice, Defendants Ralston and Gordon County facilitate the very type of misconduct described in Counts I and II by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading deputies such as Defendant Carnes to believe their actions will never be meaningfully scrutinized. The widespread practice and custom of impunity for deputies' misconduct is so well settled that it constitutes a

        de facto policy of Sheriff Ralston and Gordon County and has acquired the force of law. In this way, Defendants Ralston and Gordon County directly encourage future uses of excessive deadly force and denial of medical care such as those inflicted upon Mr. Couch.

    c. Defendant Ralston, the Sheriff of Gordon County and a final policy-maker for Gordon County, knew based on at least one prior instance of unconstitutional conduct (Defendant Carnes's shooting of Casey Honea in 2022), which was materially similar to the shooting of Mr. Couch, that additional training and supervision was needed to avoid the unjustified use of force by Defendant Carnes likely recurring in the future, but Defendant Ralston made a deliberate choice not to provide additional training to Defendant Carnes. This specific failure led directly to the violation of Mr. Couch's rights, and to his death.

72. Defendants' failure to make meaningful change indicate that they are deliberately indifferent to the suffering and harm that their inadequate policies and practices have on civilians, including people like Mr. Couch and his family.

73. The policies, practices, customs, and official decisions set forth above were the moving force behind the violation of Mr. Couch's constitutional rights.

## COUNT IV
### State Law Wrongful Death Claim
### (Defendant Carnes)

74. Each paragraph of this Complaint is incorporated as if restated fully herein.

75. As described in the preceding paragraphs, Defendant Carnes's actions toward Mr. Couch violated Mr. Couch's constitutional rights and wrongfully caused his death. As a direct and proximate result of Defendant Carnes's intentional and wrongful acts, Mr. Couch suffered serious and fatal injuries, resulting in his death.

76. As Mr. Couch's surviving child, Plaintiff KELSEY MORGAN BROWN is entitled under O.C.G.A. § 51-4-2 to recover the full value of the life of Billy Dewayne Couch, without any deductions for necessary or other personal expenses that would have been incurred by Mr. Couch had he lived. The value of Mr. Couch's life includes intangible elements such as his talents, society, and relationships to his daughter, extended family, and friends.

77. Plaintiff ESTATE OF BILLY DEWAYNE COUCH is entitled to recover all funeral, medical, and other necessary expenses resulting from Mr. Couch's injury and death pursuant to O.C.G.A. § 51-4-5(b).

## COUNT V
### State Law Assault and Battery Claim—Defendant Carnes

78. Each paragraph of this Complaint is incorporated as if restated fully herein.

79. As described more fully above, Defendant Carnes injured Mr. Couch by intentionally shooting him three times in the back and side.

80. At the time he fired his weapon, Defendant Carnes had no legal justification for shooting Mr. Couch.

81. Carnes's action of shooting Mr. Couch, compounded by his denial of medical care, caused violent injuries that resulted in Mr. Couch's death.

13

## COUNT VI
### State Law Survival Action—Defendant Carnes

82. Each paragraph of this Complaint is incorporated as if restated fully herein.

83. Defendant Carnes's conduct violated Mr. Couch's constitutional rights and wrongly caused Mr. Couch's death.

84. Prior to his death, Mr. Couch suffered serious personal injuries including but not limited to severe pain and suffering after he was shot and before he died.

85. Plaintiff ESTATE OF BILLY DEWAYNE COUCH has standing to assert this claim pursuant to O.C.G.A. § 9-2-40 and O.C.G.A. § 9-2-41.

## COUNT VII
### Indemnification—Gordon County

86. Each paragraph of this Complaint is incorporated as if restated fully herein.

87. Gordon County is responsible for paying any tort judgment for damages caused by the individually named defendants through its purchase of comprehensive law enforcement liability coverage and participation in the Association County Commissioners of Georgia ("ACCG") insurance pool pursuant to O.C.G.A. § 45-9-21, O.C.G.A. § 45-9-22, and Gordon County Municipal Code art. 1 § 2-5.

88. During all times relevant to this complaint, Defendant Carnes was acting within the scope of his employment as a Gordon County Sheriff's Deputy when he unnecessarily shot and killed Mr. Couch.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants DEPUTY AARON CARNES, SHERIFF MITCH RALSTON, and GORDON COUNTY; award compensatory damages, attorneys' fees, and costs against each

Defendant; award punitive damages against each of the individual Defendants; and provide any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

KELSEY MORGAN BROWN

BY: /s/ Wingo Smith
    *One of Plaintiffs' Attorneys*

| | |
|---|---|
| SPEARS & FILIPOVITS, LLC<br>315 W. Ponce de Leon Ave., Ste. 865<br>Decatur, Georgia 30030<br>404-905-2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law | **Jeff Filipovits**<br>Jeff Filipovits<br>Georgia Bar No. 825553<br><br>**Wingo F. Smith**<br>Wingo F. Smith<br>Georgia Bar No. 147896 |
| UW CIVIL RIGHTS AND JUSTICE CLINIC<br>William H. Gates Hall Suite 223<br>P.O. Box 85110<br>Seattle, Washington 98145-1110<br><br>C/O LOEVY & LOEVY<br>311 N. Aberdeen St., 3rd Fl.<br>Chicago, IL 60607<br>312.243.5900<br>david@loevy.com<br>nowsohl@uw.edu | David B. Owens*<br>Rachel Nowlin-Sohl*<br><br><br><br>*Motion for pro hac vice admission forthcoming |